IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| EARL RINGO, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 03-8002-CV-W-RED |
| | ) | |
| DONALD ROPER, | ) | |
| | ) | |
| Respondent. | ) | |

**ORDER**

NOW before the Court are the Petition for Writ of Habeas Corpus (Doc. 27), Petitioner Earl Ringo's First Amended Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (Doc. 28), Response to Petition for Writ of Habeas Corpus in a Capital Case (Doc. 34), and Petitioner Earl Ringo's Traverse (Doc. 40). For the following reasons the Court finds that Petitioner's Petition and Amended Petition for Writ Of Habeas Corpus (Docs. 27 and 28) are due to be denied in their entirety.

I. FACTUAL AND PROCEDURAL BACKGROUND

The facts of this case have been stated in detail in the previously reported state court decisions which can be found at *State v. Ringo*, 30 S.W.3d 811 (Mo. banc 2000) and *Ringo v. State*, 120 S.W.3d 743 (Mo. banc 2003). In brief, Petitioner was found guilty of two counts of first-degree murder. These murders occurred during the robbery of a Ruby Tuesday's restaurant in Columbia, Missouri where Petitioner had formerly been employed. The stated purpose of the robbery was to finance Petitioner's move from Missouri to Indiana. Petitioner did not act alone, a friend, Quentin Jones, also participated in the robbery and murders. Jones pleaded guilty to first degree murder, second degree murder, first-degree robbery and armed criminal action and

testified against Petitioner during the trial. The jury recommended a sentence of death on each count for Petitioner. The trial court sentenced the Petitioner accordingly. Petitioner appealed to the Missouri Supreme Court, and his appeal was denied. *State v. Ringo*, 30 S.W.3d 811. Petitioner motioned for rehearing, which was denied.

Petitioner filed a Rule 29.15 motion for post-conviction relief *pro se*. This motion was later amended by appointed counsel. The motion court denied all five claims raised in the amended motion. This ruling was appealed to the Missouri Supreme Court, which affirmed the motion court's denial of post conviction relief and denied a motion for rehearing . *Ringo v. State*, 120 S.W.3d 743.

Petitioner now comes before this Court, requesting a writ of habeas corpus to issue pursuant to 28 U.S.C. § 2254.

## II. STANDARD OF REVIEW

Section 2254 of Title 28 of the U.S. Code permits a prisoner in state custody to petition a federal court for a writ of *habeas corpus* "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254. Specifically, section 2254(d)(1) of Title 28, as amended by the AEDPA, provides as follows:

> (d) An application for a writ of *habeas corpus* on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]

28 U.S.C. § 2254(d)(1).

As the United States Supreme Court explained in *Williams v. Taylor*, for a petitioner to

obtain federal *habeas* relief, he or she must first demonstrate that his case [or her case] satisfies the condition set by § 2254 (d)(1). *Williams*, 529 U.S. 362 (2000).

In sum, the Supreme Court has stated that the purpose of § 2254 (d) as amended by the AEDPA is to limit the scope of federal court review, compared to past practice, "in order to effect the intent of Congress to expedite *habeas* proceedings with appropriate deference to the state court determinations." *Whitmore v. Kemna*, 213 F.3d 431, 433 (8th Cir. 2000)(*quoting Williams v. Taylor*, *supra*). A petitioner may bring a federal *habeas* petition to challenge a state court's application of federal law or to challenge a state court's factual findings, but the federal court's power to grant a state prisoner's application on claims adjudicated on the merits in state court is much more constrained under the AEDPA. *Williams*, 529 U.S. at 412. The state court's findings of facts are subject to a deferential standard of review; meaning, these findings are presumed correct unless the petitioner can rebut those findings with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Kinder v. Bowersox*, 272 F.3d 532, 538 (8th Cir. 2001); *James v. Bowersox,* 187 F.3d 866, 871 (8th Cir. 1999).

The state courts should have a proper opportunity to address a petitioner's claims of constitutional error before those claims are presented to the federal court. *Coleman v. Thompson*, 501 U.S. 722, 729-32 (1991). The requirement of exhaustion of remedies is satisfied if the petitioner has "fairly presented" his claims to the state court, thus preserving those claims for federal review, by properly raising both the factual and legal bases of the claim in state court proceedings, affording that court "a fair opportunity to rule on the factual and theoretical substance of [the] claim." *Krimmel v. Hopkins*, 56 F.3d 873, 876 (8th Cir. 1995). "In order to fairly present a federal claim to the state courts, the petitioner must have referred to a specific

3

federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue in a claim before the state courts." *McCall v. Benson*, 114 F.3d 754, 757 (8th Cir. 1997)(citations omitted). Even when a petitioner has technically met the exhaustion requirement, the federal court may still be prevented from considering the federal *habeas* claim if it is procedurally defaulted. "A *habeas* petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance." *Coleman*, 501 U.S. at 732. A claim may be lost due to procedural default at any level of state court review: at trial, on direct appeal, or in the course of state post-conviction proceedings. *Kilmartin v. Kemna*, 253 F.3d 1087, 1088 (8th Cir. 2001).

### III. DISCUSSION OF PETITIONER'S GROUNDS FOR HABEAS RELIEF

A. <u>Claim One: Petitioner was denied his right to effective assistance of counsel when his trial counsel failed to present an adequate mitigation case before the jury</u>.

Petitioner argues that his:

> Sixth, Eighth, and Fourteenth Amendment Rights were violated by trial counsels' failure to adequately investigate and present compelling mitigation evidence regarding [Petitioner's] abysmal life history, including his violent and squalor-ridden childhood and his suffering from Post-Traumatic Stress Disorder, and trial counsel were also ineffective for unreasonably relying solely on the abbreviated testimony of relatives . . ..

Specifically, Petitioner argues that the failure to call Dr. Draper to testify and the failure to follow through on a suggestion of Dr. Briggs to have Petitioner's personality assessment reviewed by a clinical psychologist rendered the assistance of trial counsel ineffective.

To establish an ineffective assistance of counsel claim, Petitioner has the burden to prove that (1) counsel's performance was deficient, falling below an objective standard of

4

reasonableness, and (2) that the deficient performance prejudiced the Petitioner as to deprive him of fair proceedings. *Strickland v. Washington*, 446 U.S. 668, 687-88 (1984).

Regarding the deficiency prong of an ineffective assistance of counsel claim, ineffective assistance will only be found if counsel "'failed to exercise the customary skills and diligence that a reasonably competent attorney would [have] exhibit[ed] under similar circumstances.'" *Apfel*, 97 F.3d at 1076 (quoting *Cheek v. United States*, 858 F.2d 1330, 1336 (8th Cir. 1988) (alteration in *Apfel*)). The Court presumes that a Defendant's counsel's conduct falls within a wide range of reasonable professional assistance. *Strickland*, 446 U.S. at 688-89. A Court should view the circumstances as they appeared to counsel at the time of the proceeding and not benefit from hindsight. *Id.* "Judicial scrutiny of counsel's performance must be highly deferential," and a Court will rarely second-guess an attorney's tactics or strategic decisions. *Huls v. Lockhart*, 958 F.2d 212, 214 (8th Cir. 1992) (citations and quotations omitted).

Regarding the prejudice prong of the ineffective assistance of counsel claim, a Defendant must show that, but for the attorney's unprofessional errors, there is a reasonable probability that the results of the proceeding would have been different. *Strickland*, 466 U.S. at 688. A reasonable probability is one sufficient to undermine the confidence in the outcome of the proceeding. *Id.* Failure to demonstrate prejudice can be dispositive of a case, and a court need not address the reasonableness of an attorney's behavior if the defendant cannot prove prejudice. *Apfel*, 97 F.3d at 1076.

Petitioner's trial counsel sought the services of several experts in preparation for Petitioner's trial. They included Dr. Wanda Draper, a child development expert, Dr. Robert Briggs, a psychologist, and Dr. Wheelock, a learning disorder expert. Trial counsel also

5

investigated Petitioner's family background through social worker James Dempsey. Dr. Briggs found that Petitioner scored positive in tests related to Post-Traumatic Stress Disorder (PTSD). Dr. Briggs also suggested that trial counsel engage a clinical psychologist to review Petitioner's personality assessment. Additionally, Dr. Briggs' report noted that he "would not recommend retesting this patient from a neuropsychological point of view."

Petitioner argues that counsel was ineffective by not pursuing the suggestion of Dr. Briggs, in order to present evidence of PTSD during the guilt and penalty phases of Petitioner's trial. Petitioner further argues that trial counsel's decision not to pursue the suggestion of Dr. Briggs was "inexplicable," "deficient," and can not be considered "trial strategy" because it was not reasonable under the circumstances. Additionally, Petitioner argues that counsel abandoned the investigation into mitigating evidence at an unreasonable juncture, which did not allow them to make a fully informed decision as to strategy. Essentially, Petitioner argues that a reasonable attorney would have followed Dr. Briggs' suggestion.

Petitioner argues that counsel was ineffective for failing to call Dr. Draper to the stand to present mitigating evidence. Dr. Draper prepared a report outlining the horrific youth of Petitioner. Instead of Dr. Draper, the trial counsel chose to call family members to testify, including Petitioner's mother. Trial counsel noted that she did not use Dr. Draper's testimony as she was afraid it would conflict with the testimony of Petitioner's mother. Petitioner characterizes this decision by trial counsel as "unreasonable" and a failure to "present the best evidence."

The Court does not find that trial counsel was ineffective for failing to follow the suggestion of Dr. Briggs or for not calling Dr. Draper during trial or sentencing. Trial counsel

6

maintained their duty to investigate the available defenses by employing the various experts in their case. This is not a case like many of those cited by Petitioner where there was a failure to conduct any investigation. *See Wiggins v. Smith*, 539 U.S. 510 (2003) (finding a failure to investigate childhood replete with mitigating evidence although quick investigation would have yielded results.) While counsel may have been able to do more investigation than what was accomplished in the case, the decision not to pursue such additional investigation does not mandate the conclusion that counsel was ineffective. Counsel strategically decided which defenses to pursue and which defenses to abandon after an investigation into the possible defenses.

Petitioner also argues there was a duty to present mitigation evidence, not simply investigate it. *See Simmons v. Luebbers*, 299 F.3d 929 (8th Cir. 2002) (finding that none of the mitigating evidence of a traumatic childhood, a father's alcoholism, sexual assault and low IQ were presented when mother of the Defendant only testified that she loved her son, and failure to present the mitigating evidence was ineffective assistance.) Even assuming such a duty did exist, mitigation evidence was presented in this case, although not through expert testimony. Trial counsel called Petitioner's family to the stand and they recounted his abusive childhood and neglected upbringing. Clearly, the decision of trial counsel on how and through whom to present the evidence was one of strategy and is not a basis for an ineffective assistance of counsel claim. *See Strickland*, 448 U.S. at 690 (noting "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.")

Additionally, the Petitioner has only presented the bare conclusion that there was prejudice resulting from the trial counsel's choices. Petitioner has presented nothing to support

7

his contention that the verdict or sentence in his case would have been different if the jury had heard from an expert rather than family members or if the PTSD had been further investigated and thus fails the prejudice prong. The Missouri Supreme Court did not act contrary to law in finding that counsel was not ineffective.

B. <u>Claim Two: Petitioner was denied his right to effective assistance of counsel when his counsel failed to investigate and present evidence that he suffered from diminished capacity during the crime</u>.

Petitioner argues that he was denied his right to effective assistance of counsel because trial counsel failed to adequately investigate and present expert testimony regarding Petitioner's diminished capacity during the crime. Specifically, Petitioner claims that if trial counsel had not ignored the suggestion of Dr. Briggs and had obtained further psychological assessments, then it would have been established that Petitioner suffered from PTSD, depression, and a learning disability. Furthermore, Dr. Smith, a physician who evaluated Petitioner during the post-conviction proceedings in the state courts, found that due to childhood traumas, Petitioner panicked during the robbery, reacting defensively and impulsively when he fired his gun and killed Mr. Poyser. These findings may have supported a defense theory that Petitioner did not deliberate.

Dr. Briggs was hired by trial counsel for "looking for mental issues regarding mitigation." Dr. Briggs never diagnosed Petitioner with PTSD, nor did he alert trial counsel that PTSD could be a possible mitigating factor. Trial counsel testified that her relationship with Dr. Briggs was one in which she would have expected him to notify her if they needed to explore other psychological disorders for Petitioner's case. Additionally, he was hired to specifically

8

evaluate PTSD, but he never informed trial counsel that Petitioner suffered from PTSD.

The Missouri Supreme Court found that trial counsel was reasonable for relying on Dr. Briggs' assessment, and that there was no duty for trial counsel to continue to "shop for an expert witness" who would agree with a PTSD mitigation defense. Additionally, the Court agreed that there was sufficient evidence presented from which a jury could have found a lack of deliberation, and convicted Petitioner for a lesser crime.

This Court agrees that the Missouri Supreme Court's decision was reasonable. Trial counsel hired an expert to look into Petitioner's mental health. After an investigation, Dr. Briggs did not recommend further testing, and only diagnosed Petitioner with a learning disability. He did suggest that counsel could have evaluated Petitioner by a clinical psychologist, but trial counsel determined there was no reason to continue to pursue this defense given Dr. Briggs' assessment. Although a later expert, Dr. Smith, did diagnose Petitioner with PTSD, this does not render counsel's representation ineffective.

As noted above, a Court should view the circumstances as they appeared to counsel at the time of the proceeding and not benefit from hindsight. *Strickland*, 446 U.S. at 688-89. Trial counsel was given no reason by Dr. Briggs to pursue PTSD as a possible defense. Given Dr. Briggs' report, this determination is not unreasonable. Trial counsel investigated the PTSD possibility, and found that Dr. Briggs' testimony would not assist them with a defense of diminished capacity. Again, this was a strategical decision made upon investigation.

Moreover, Petitioner again fails to meet the prejudice prong of *Strickland*. There was substantial evidence on deliberation presented to the jury. Petitioner planned the robbery, had brought a gun to use in connection with the robbery, spent the night before the robbery cleaning

the gun, and had committed the murder of Mr. Poyser by shooting him in the head from six inches away.  Petitioner presents nothing to suggest that if the jury had been presented with the PTSD theory, the outcome would have been different.

    C. <u>Claim Three: Trial court erred in striking venire-person Bonnie Boyd for cause</u>.

Petitioner argues, in his third ground for habeas relief, that he was denied his right to a fair and impartial jury as guaranteed by the Sixth and Fourteenth Amendments when Bonnie Boyd, one of only four venire members who was African-American, was struck for cause.  Ms. Boyd was first challenged for cause when she mentioned it would be a hardship for her to serve on the panel due to the two jobs she held, and that she may have to surrender vacation time to serve.  The court was not "eager" to release her at this point in the trial, as she was one of only four African-Americans in the jury pool.  After a recess, Ms. Boyd informed the court that she had checked with her employer and she would not be required to use vacation time for jury service.

Ms. Boyd was again challenged when voir dire questioning reached the topic of the potential jurors' ability to sit in judgment of another.  After one juror mentioned that she could not sit in judgment of another, Ms. Boyd mentioned that she also would not be able to sit in judgment of another.  Later during the process, the trial court revisited the issue with Ms. Boyd.  At this time, she said that if "everything was laid out in front of me, I can make a decision."  The state moved to strike her for cause, and the court agreed.

Petitioner argues that Ms. Boyd was sufficiently rehabilitated by the later questioning of the court, and that the decision to strike Ms. Boyd for cause is "particularly troubling given the unique circumstances of this case."  Petitioner, an African-American, was on trial for the murder

10

of a Caucasian man and woman.  The ruling by the court, Petitioner argues, given the rehabilitation of Ms. Boyd, is an abuse of discretion.  Additionally, Petitioner argues that the move to strike Ms. Boyd for her employment hardship and the move to strike due to her inability to sit in judgment show racial prejudice during the voir dire process.

The Missouri Supreme Court found that *Baston v. Kentucky*, 476 U.S. 79 (1986) was not controlling as Petitioner's case involved a question of strikes for cause and not peremptory strikes.  However, the court did agree that *Baston* was instructive.  *State v. Ringo*, 30 S.W.3d at 816-18.  The court then stated that in accordance with *Baston*, the state gave race-neutral reasons for its challenge for cause.  The Court then found that an objective view of the facts showed self-contradicting remarks by Ms. Boyd.  Thus, the Court's decision to strike for cause was not unreasonable given the circumstances.

This Court finds that the Missouri Supreme Court's ruling was not contrary to or an unreasonable application of clearly established federal law.  It is presumed that a jury is impartial.  *Ross v. Oklahoma*, 487 U.S. 81, 86 (1988), *quoting Lockhart v. McCree*, 476 U.S. 162, 184 (1986). Additionally, the trial court is in the best position to determine the credibility of the jurors and their demeanor when answering voir dire.  *Patton v. Yount*, 467 U.S. 1025, 1038 (1984).  Given the race neutral reasons articulated for the move to strike Ms. Boyd, coupled with the trial court's position to best determine the demeanor of a juror and the caution the trial court showed early in the case in regard to losing Ms. Boyd as a potential juror, the claim for habeas relief on this point must fail.  There is nothing in the conduct of the court that approaches a racial bias or abuse of discretion.

  D.  <u>Claim Four: Improper denial of the opportunity to obtain information regarding grand jury</u>

<u>selection to challenge the suspect racial composition of the grand jury</u>

Petitioner claims that his rights to due process, equal protection, fundamentally fair trial, and freedom from cruel and unusual punishment as guaranteed under the Fifth, Sixth, Eighth and Fourteenth Amendments were violated when the trial court refused to allow discovery regarding the racial composition of the grand jury and by allowing the state to file a substitute information. Petitioner requested at the outset of grand jury proceedings that the proceedings be held on the record. Petitioner then requested extensive information regarding persons on the grand jury. These requests included: depositions, personally identifiable information as to the jurors, and discovery of selection procedures. Petitioner was supplied with the manual of procedures for the Thirteenth Judicial Circuit. Additionally, Petitioner was also supplied with a transcript of the grand jury proceeding regarding the questioning of jurors and their ability to serve. Petitioner was also able to question the prosecutor under oath regarding the proceedings. However, when given the opportunity to question the prosecutor, Petitioner did not ask any questions regarding the racial or gender make up of the grand jury. Moreover, Petitioner did not depose the circuit clerk, presiding judge, or any others present during the grand jury selection process. Petitioner makes no argument that the procedures in the manual were not followed. Rather, Petitioner solely argues that the denial of some discovery information regarding the make up of the grand jury rises to a constitutional violation.

The Missouri Supreme Court denied Petitioner's appeal on this point for two main reasons. Fist, the Court found that Petitioner did not avail himself to the discovery opportunities available. Additionally, Petitioner only sought information on his grand jury. To prove any sort of claim for systematic exclusion in grand juries based on race, Petitioner's claim would have to

12

Case 4:03-cv-08002-BCW   Document 41   Filed 08/22/05   Page 12 of 18

establish a prima facie case. This prima facie case ordinarily requires a showing of an extended period of under representation. As Petitioner did not seek out the opportunities to discover information about his own case, and did not seek out information regarding other grand juries, the state court found that no grounds for relief existed. Second, the state court noted that Petitioner was not tried under the indictment. Instead, the state filed a substitute information that was only challenged for "timeliness" and for charging a "new offense."

The Missouri court was correct in its articulation of the law and its application. The court clearly articulated the United States Supreme Court test for establishing claims of systematic exclusion of a cognizable group from jury service in *Castaneda v. Partida*, 430 U.S. 482, 494-95 (1977). In *Castaneda*, the Court stated that part two of the test required comparing the proportion of the ground in the total population to the proportion called to serve as grand jurors, over a significant period of time. *Id.* The Missouri court articulated this standard and then reasonably applied the facts of Petitioner's case.

This court finds most compelling that Petitioner was not tried under the indictment, but under a substitute information. "Under Missouri law, a defective indictment does not contaminate a subsequent information that is substituted for the indictment without objection from the Defendant." *Missouri v. Johnson*, 504 S.W.2d 23, 26 (Mo. 1973). In Petitioner's case, the only objections made were for timeliness and that the information charged a new offense. These objections were properly found to be "insufficient." Precedent from the Eighth Circuit demonstrates that a Defendant must lodge an objection to the information that is substituted for an indictment, and first challenge the practice of permitting a substitute information to be so substituted, before reaching the question of whether the composition of the grand jury is racially

13

tainted. *Cooksey v. Delo*, 94 F.3d 1214 (8th Cir. 1996). The objections made in Petitioner's case were insufficient to challenge the practice of allowing the information to be substituted for the indictment. The decision of the state court was not contrary to nor did it involve an unreasonable application of clearly established federal law and Petitioner's habeas relief is denied on this claim.

E. <u>Claim Five: Misconduct of the prosecutor during the trial violated Petitioner's right to due process</u>.

Petitioner's fifth ground for habeas relief is that the trial court erred in overruling defense counsel's objections to the State's comments and arguments in voir dire, during its case in chief, and during the guilt phase which "vouched" for the credibility of witness Quentin Jones. Jones had participated in the robbery with Petitioner. However, Jones signed a plea agreement, agreeing to give truthful testimony in exchange for the state forgoing the death penalty for his participation in the murders. Trial counsel for Petitioner filed a motion in limine to prevent vouching for Jones' credibility, which was overruled by the trial court. Petitioner complains that during voir dire, witness examination, and during the guilt phase the prosecution improperly stated that Jones had agreed to give "truthful testimony" which essentially vouched for the veracity of Jones' statements.

The Missouri Supreme Court found that the comments of the prosecution as to the elements of the plea agreements did not rise to improper vouching. This court finds that the Missouri Supreme Court did not act contrary to clearly established law in their decision, and that

14

it was reasonable.

In *State v. Wolfe*, 13 S.W.3d 248, 256 (Mo. banc 2000), *cert. denied*, 121 S. Ct. 114, the Supreme Court of Missouri noted that plea agreements are double-edged swords. *Id.* at 256-57. These agreements both support a witnesses' credibility and impeach it. *Id.* The agreement requiring truthful testimony both demonstrates a witnesses' desire to speak truthfully, but also a witnesses' desire to have some information of value to offer, perhaps manufacture, so that they may receive the benefits of the agreement.

Presenting this conflict to the jury allows the jury to fully understand the motivations of the witness on the stand. By presenting the elements of the agreement, the prosecution was not offering his belief of the veracity of Jones' statements. The determination of the prosecution as to whether Jones had kept his part of the bargain was still yet to come. As such, it distinguished Petitioner's case from cases such as *United States v. Rudberg*, 122 F.3d 1199 (9th Cir. 1997), where the prosecution mentioned that some witnesses had already received reduced sentences, the veracity of their testimony having already been determined by the government. Indeed, the determination of the Missouri Supreme Court is in line with the established precedent of the Eighth Circuit. *See, e.g.*, *United States v. Kamerud*, 326 F.3d 1008, 1017 (8th Cir. 2003) (holding that a prosecutor has not vouched improperly for the government's witnesses by inquiring as to plea agreements and downward departures sought for truthful testimony.)

The prosecution framed each statement regarding "truthful testimony" as a reflection of the agreement reached between the state and the witness, not as an endorsement of the witnesses testimony. Such use of the terms of the agreement do not rise to improper vouching by the state. The Missouri Supreme Court reasonably followed established precedent on this claim and

15

habeas relief is denied.

F. Claim Six: Petitioner was denied his right to a fair trial when his trial counsel agreed to a change of venue to a jurisdiction that was nearly devoid of African-American jurors.

Petitioner has styled this claim as one "not, as characterized by the Respondent, a straightforward due process violation as a result of systemic under representation of minorities on the venire panels." Rather, the claim is one that "his trial attorneys erred in agreeing to a change of venue to a Missouri county that had a history of under representing minorities on the venire panels." Petitioner claims that this "ill-fated decision" denied his right to effective assistance of counsel. As such, Petitioner claims "no reasonably competent trial counsel would voluntary subject a minority defendant to jury selection in Cape Girardeau County." [sic]

The Missouri Supreme Court determined that although Petitioner clearly had a constitutional right to the unbiased selection of a jury drawn from a cross-section of the community, he could not establish a prima facie violation of the fair cross-section requirement. Since Petitioner's fair cross-section claim was without merit, trial counsel could not be found ineffective for failing to object to the transfer of venue as "counsel can not be deemed ineffective for failing to raise a nonmeritorious claim." *Ringo v. State*, 120 S.W.3d at 747, quoting *State v. Nunley*, 923 S.W.2d 911, 924 (Mo. banc 1996).

This Court finds that the Missouri Supreme Court correctly applied the law, and that the conclusion of the court was reasonable. While Petitioner argues the Missouri Supreme court was incorrect to review the substance of the fair cross-section claim, the court agrees with the analysis of the Missouri Supreme Court. It is axiomatic that trial counsel can not be ineffective for failing to object to the trial being held in a county that under-represented minorities, if the

16

county did not truly under-represent minorities. The evidence brought to the court is not conclusive of under-representation. Only eighteen cases are reviewed, and there is no context given as to how these cases constitute a representative sample of all cases in Cape Girardeau County.

Given the proceeding analysis, the trial attorney could not have been found to fall below the standard expected of a reasonable attorney. However, even if trial counsel did fall below the standard, Petitioner can not meet the "prejudice" requirement under *Strickland*. Petitioner has made no attempt to show that any of the jurors who convicted him were anything but impartial. While Petitioner does cite some statistical analysis demonstrating that a minority defendant facing an all-majority jury is slightly more likely to be convicted, this is not the sort of evidence that establishes prejudice to Petitioner. To hold that it does would be to say that any minority can not receive a fair trial at the hand of a jury which does not include a minority representative. Such a holding would run opposite the presumption that a jury is impartial. *See supra*. Petitioner must show that his jury was not impartial, and he has failed to do so. *See Young v. Bowersox*, 161 F.3d 1159 (8th Cir. 1998) *cert. denied* 528 U.S. 880 (1999) (holding that failure to make an objection under *Baston* could not meet the prejudice prong because he had not shown that any of the jurors who had convicted him were not impartial). There was adequate proof presented at trial to support the verdict of the jury and no indication that the conviction and death sentence were motivated by any racial undercurrents.

## IV. CONCLUSION

Under 28 U.S.C. § 2254(d), a federal court may not grant a writ of habeas corpus on any claim that was adjudicated on the merits in state court unless the decision was contrary to or

17

involved an unreasonable application of clearly established federal law as determined by the Supreme Court. 28 U.S.C. § 2254 (d)(1). However, a federal court may not issue a writ of habeas corpus simply because it concludes that the state court applied clearly established federal law erroneously or incorrectly -- the application must be unreasonable, as well. *Williams v. Taylor*, 529 U.S. 362, 411-13 (2000).

For the reasons stated above, this Court finds that the state court determinations on Petitioner's grounds for relief were neither contrary to federal law nor did they involve an unreasonable application of clearly established federal law. Moreover, the determinations were reasonable. Thus, Petitioner's Petition for Habeas Corpus and First Amended Petition for Habeas Corpus are **DENIED** in their entirety.

**IT IS SO ORDERED.**

DATE: August 22, 2005      */s/ Richard E. Dorr*
                           RICHARD E. DORR, JUDGE
                           UNITED STATES DISTRICT COURT